UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MONA COUSIN,

                        Plaintiff,

   -against-                                        **MEMORANDUM & ORDER**

WHITE CASTLE SYSTEM, INC.,                   06-CV-6335 (JMA)

                        Defendant.
------------------------------------------------------------X

A P P E A R A N C E S:

Joseph D'Addario
Law Offices of John J. Guadagno, P.C.
136 East Main Street
East Islip, NY 11730
    *Attorney for Plaintiff*

Daniel MacClaren Stewart
White, Fleischner & Fino, LLP
61 Broadway, 18th Floor
New York, NY 10006
    *Attorney for Defendants*

**AZRACK**, **United States Magistrate Judge:**

      In this personal injury action, plaintiff Mona Cousin ("Cousin" or "plaintiff") alleges that defendant White Castle System, Inc. ("WCS" or "defendant") is liable for injuries she sustained after she slipped and fell in a puddle of water and soda on the floor of defendant's fast food restaurant. The parties have consented to my jurisdiction for all purposes. (Dkt. No. 22.) Now before the Court is defendant's motion for summary judgment on the grounds that plaintiff cannot establish that defendant created or had notice of a hazard or that the puddle, if it existed, caused her to fall. Defendant further argues that in light of surveillance video that contradicts plaintiff's account, the Court should reject her testimony as "incredible as a matter of law." For the reasons discussed below, defendant's motion for summary judgment is granted.

# I. FACTS

## A. The Testimonial Evidence

On February 3, 2006, plaintiff and her cousin Harold Williams ("Williams") drove to defendant's White Castle fast food restaurant located at 900 Pennsylvania Avenue in Brooklyn, New York ("White Castle" or "restaurant"). (Cousin Dep. at 16:5–18; 19:2–20:21; Lewis Dep. at 8:10–15; Williams Dep. at 10:6–8.) They entered the restaurant through the rear door and walked toward the counter to place an order. (Cousin Dep. at 21:20–25.) As they made their way to the counter, they passed through the restaurant's self-service beverage area, which consisted of a soda machine and a coffee machine situated directly opposite each other. (Id. at 23:20–24:19; Lewis Dep. at 12:11–22; Ex. O.)[1] Plaintiff did not notice any liquid on the floor while walking to the counter. (Id. at 40:24–41:5; 34:25–35:3.) However, as she passed through the beverage station, she felt something sticky under her feet and saw a "stain" on the floor "[l]ike something fell there and dry [sic] or something like that." (Id. at 41:4–21.) Plaintiff walked over this sticky stain without incident and did not report it to any White Castle employees. (Id. at 41:22–42:14.) Williams did not notice any puddles or debris on the floor as he walked into the store. (Williams Dep. at 26:10–13.)

After walking up to the counter and waiting on line for a few minutes, plaintiff placed a "to go" order for hamburgers and sodas. (Cousin Dep. at 22:6–23:8.) Approximately twenty minutes later, she and Williams received their food. (Cousin Dep. at 22:6–23:15; 26:15–27:3.) The hamburgers were in one bag and the sodas were in cups placed in a separate bag. (Id.) According to plaintiff, the cups were already filled with soda when the employee handed them to her. (Id. at 23:3–8.) According to defendant, all beverage service in the restaurant at the time of his incident was self-service such that if a customer ordered a beverage, she would be handed an

---

[1] Citations to "Ex." refer to exhibits attached to the defendant's Rule 56.1 statement.

empty cup from behind the counter and directed to fill it herself at the self-service beverage station. (Lewis Dep. at 12:23–13:18.)

After receiving their order, plaintiff and Williams started to exit the restaurant. Williams carried the sodas and plaintiff carried the hamburgers. Williams walked ahead of plaintiff and exited the restaurant without incident. (Id. at 27:13–16.) He did not notice any spills on the floor either while waiting in the restaurant or on his way out. (Williams Dep. at 26:14–21.) Plaintiff, however, was less fortunate. She testified at her deposition that as she reached the area between the coffee and soda machines, where she had previously seen the sticky stain, her right foot slipped forward and she fell backwards onto the floor. (Cousin Dep. at 27:6–29:24; 80:16–81:6.) She twisted her right knee, hit her head against the tiled floor, and immediately felt pain in her knee, back, and head. (Id. at 27:6–29:24; 37:24–38:12.). Plaintiff did not notice any hazards on the floor prior to her fall. However, after an unidentified male in an apron, whom she believes was a White Castle employee, helped her up, she noticed that the back of her pants were wet and she saw a puddle of water and soda on the floor where she had fallen (Cousin Dep. at 30:3–31:14; 33:23–34:24.)

Plaintiff further testified that immediately after her fall, while still on the floor, she saw, for the first time, a yellow caution sign leaning against the wall to her left somewhere in between the counter and the rear door. (Id. at 35:4–10.) She could not recall if there was any liquid near the sign. (Id. at 35:22–24.) Williams testified that he had seen a "folded up" yellow caution sign and a slop bucket near the rear door both as he entered and exited the restaurant. (Williams Dep. at 17:21–18:15.) Williams did not see anyone working with the bucket at any time. (Id. at 18:16–18.) Neither plaintiff nor Williams saw anyone mopping at any point during the incident. (Id. at 18:16–18; Cousin Dep. at 36:21–24.) Neither reported the incident, the puddle, or any other hazards to any WCS employees at any point before or after the fall. (Id. at 37:13–20.)

3

Jacqueline Graham, the White Castle shift manager on duty at the time of the incident, also testified that neither she nor any other employees received any reports of spills or puddles or that a customer had fallen in the restaurant. (Graham Dep. at 18:22–19:16; Lewis Dep. at 39:8–40:19; 46:8–47:25.)

Plaintiff asserts that she twisted her knee during the fall and sustained pain and injuries to her knee, back, and neck. (Cousin Dep. at 27:6–29:24; 38:12.) After she returned home, she called an ambulance and was admitted to the hospital for overnight observation. (Id. at 48:15–53:19.) Neither party submitted plaintiff's medical records and the record does not indicate what diagnosis or treatment she received at the hospital. However, plaintiff testified that she received physical therapy, pain injections, and knee surgery over the next year. (Id. at 57:2–67:23.)

**B. The Surveillance Video**

Neither plaintiff nor defendant identified any other witnesses to plaintiff's fall. However, the incident was captured by White Castle's video surveillance system. (Ex. M) The surveillance video submitted by defendant includes three different camera views depicting three different areas of the restaurant. Not all portions of the restaurant are visible. The video is grainy and out of focus and it is difficult to make out details. Moreover, the video is not a continuous recording but rather a frame-by-frame depiction akin to a series of photographs displayed in rapid succession. Thus, any activity that may have occurred between frames does not appear to have been recorded. Nevertheless, the three cameras together captured most of plaintiff's activity within the restaurant.

The video shows plaintiff and Williams arriving at the White Castle at approximately 10:00 p.m. (Ex. M; Def'd 56.1 at ¶ 23; Pl. Opposition Br. at ¶ 5.) Plaintiff can be seen entering the restaurant alone through the rear door, which is around a corner and several yards away from the beverage station, while Williams remains in the car. A yellow caution sign that appears to be

4

only partially erect or leaning against the wall is on the floor next to the door. After entering, plaintiff makes her way through the restaurant, walks past the beverage station and arrives at the counter without incident. She waits on line and then appears to place an order. She then walks away from the counter with an indiscernible white object in each hand. She stops briefly at a table in between the counter and beverage station and then makes three trips back-and-forth between a table and the self-service soda machine. It is unclear if she actually uses the machine, however, she stands before it for several seconds on each trip. She does not slip, stumble, or fall at any point during any of these trips to the soda machine. At some point after plaintiff places her order, Williams enters the restaurant and joins her. A few minutes later, plaintiff receives at least two, possibly more, bags from behind the counter. She gives one bag to Williams and they start to walk out with plaintiff in the lead.

On her way out, plaintiff passes by the soda machine again without incident. However, as she reaches the door, she appears to stumble or fall down just as she attempts to pull open the door. She drops out of the camera's view for a brief moment and then reappears as she regains her stance with the assistance of an unidentified male who is wearing jeans and appears to be a customer. Williams can be seen walking out with plaintiff and appears to have been present during the fall. Both plaintiff and Williams exit the restaurant immediately after the incident, get into their car, and drive away a few moments later. Plaintiff does not appear injured.

The cause and manner of plaintiff's fall cannot be ascertained from the video due to the low picture quality and camera angle. Additionally, the line of sight between the camera and plaintiff is obstructed by Williams and two other customers that are exiting right behind plaintiff. Consequently, the floor beneath plaintiff cannot be seen at the time of the fall. No puddles or other hazards are visible anywhere in the restaurant, though not all parts of the floor are visible.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment should be granted if, after construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor, there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–50, 255 (1986); Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). If the moving party meets this burden, the opposing party must produce evidence that raises a material question of fact to defeat the motion.[2] Fed. R. Civ. P. 56(e); Miner v. Clinton County, N.Y., 541 F.3d 464, 471 (2d Cir. 2008).

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to defeat summary judgment. Anderson, 477 U.S. at 252. Rather "there must be evidence on which the jury could reasonably find for the plaintiff." Id. (emphasis added). Moreover, the opposing party must set forth "concrete particulars" showing that a trial is needed. R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984) (citation and quotation marks omitted). "Conclusory allegations will not suffice." Delaware & Hudson Ry. v. Consolidated Rail Corp., 902 F.2d 174, 178 (2d Cir. 1990). In considering the motion for

---

[2] New York's summary judgment framework differs from the federal standard. Under New York law, a defendant in a slip-and-fall action cannot prevail on summary judgment by merely pointing to gaps in the plaintiff's case. See DeFalco v. BJ's Wholesale Club, Inc., 38 A.D.3d 824, 825 (2d Dep't 2007). Rather, the defendant must satisfy a threshold burden by presenting affirmative evidence that it neither created the hazard nor had constructive notice of it and only then may a court examine the sufficiency of plaintiff's case. See id. By contrast, under federal law, summary judgment for the defendant is appropriate in the absence of evidence supporting the plaintiff's prima facie case. See Celotex Corp., v. Catrett, 477 U.S. 317, 325 (1986) ("[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case."). This federal standard controls here because what burdens each party bears on summary judgment is a procedural rather than substantive matter. See Tingling v. Great Atl. & Pac. Tea Co., No. 02-CV-4196, 2003 WL 22973452, at *2 n.2 (S.D.N.Y. Dec. 17, 2003); see also Celotex, 477 U.S. 317.

summary judgment, the court may not weigh the evidence but must instead view the evidence in the light most favorable to the non-moving party, draw all reasonable inferences in the nonmoving party's favor, and eschew credibility assessments.  Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004) (citations and quotation marks omitted).

**B. Plaintiff's Credibility**

Generally, "[r]esolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment." United States v. REM, 38 F.3d 634, 643 (2d Cir. 1994).  However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007) (holding that the lower courts erred in adopting plaintiff's version of the facts when considering defendant's motion for summary judgment because a videotape in evidence directly contradicted the plaintiff's testimony); see also Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (rejecting plaintiff's account and affirming grant of summary judgment in favor of defendant because the plaintiff's testimony was unsubstantiated and replete with inconsistencies and improbabilities); Dove v. City of New York, No. 03-CV-5052, 2007 WL 805786, at *6 (E.D.N.Y. Mar. 15, 2007) (rejecting plaintiff's account and granting summary judgment to defendant because medical evidence contradicted plaintiff's version of events).

Here, as in Scott, the surveillance video submitted by defendant blatantly contradicts numerous aspects of plaintiff's account.  Most significantly, the video shows that plaintiff fell not at the soda machine, as she testified during her deposition, but at the door, which was several yards away and around a corner from the beverage station.  Additionally, the yellow caution sign, which plaintiff considers material to her case, is not in the area she described during her

7

deposition. Also, Williams, who plaintiff testified had already exited by the time she fell, was in fact present during the fall. Therefore, to the extent plaintiff's account conflicts with the surveillance video, the facts will be construed as depicted in the video.

However, unlike in Scott, the facts revealed by the surveillance video are not dispositive of the issues raised by defendant's motion for summary judgment, i.e. whether plaintiff can establish that a puddle exited and that defendant created it. This is due, in part, to the limitations of defendant's surveillance system. It did not record any sounds or conversations that took place during the incident and it does not include a view of the floor where plaintiff fell at the time she fell. Though portions of the floor are visible in the minutes just before the incident, the video is grainy and out of focus. Given the low picture quality and stop-motion nature of the recording, it is quite possible that the surveillance system failed to record a puddle of light-colored or clear liquid against the light-colored tile of the restaurant or, if it did, that such a detail is simply not visible on the tape. Additionally, defendant only submitted approximately twenty minutes of tape, which shows only what occurred in the restaurant between the time plaintiff arrived and left. Any events that could have caused a puddle to form before plaintiff's arrival are not depicted. Consequently, the surveillance video does not conclusively disprove plaintiff's assertion that a puddle was present at the time she fell and sheds no light on how or when any such puddle may have formed or what role if any defendant's employees had in creating it.

Under these circumstances, the Court must rely on plaintiff's testimony to resolve the motion and, in so doing, must accept as true those aspects of her testimony that are not directly contradicted by the surveillance video. This is consistent with the unlikely yet reasonable possibility that a jury presented with these partially conflicting versions may opt to disregard plaintiff's testimony about the location of the fall and other facts contradicted by the video as, at best, a lapse in memory, while crediting the portions of her testimony that the video does not

address. Nevertheless, even after construing all of the other evidence and drawing all reasonable inferences in plaintiff's favor, she has failed to state a prima facie case for the reasons below.

## C. <u>New York Negligence Law</u>[3]

To establish a prime facie case for negligence under New York law, a plaintiff must demonstrate: (1) that the defendant had a cognizable duty of care; (2) that the defendant breached that duty; and (3) that the plaintiff suffered damages as a proximate result of defendant's breach. See <u>Solomon v. City of New York</u>, 66 N.Y.2d 1026, 1027 (1985); see also <u>Buskey v. Boston Market Corp</u>, No. 04-CV-2193, 2006 WL 2527826, at *3 (E.D.N.Y. Aug. 14, 2006). It is well-settled, and the parties do not dispute, that WCS owed Cousin a duty to "maintain [its] premises in a reasonably safe condition", which includes a "duty to warn those lawfully on the premises of potentially dangerous conditions that are not readily observable." <u>Comeau v. Wray</u>, 241 A.D.2d 602, 603 (3d Dep't 1998). Additionally, plaintiff's testimony that she saw a puddle immediately after her fall is enough, at the summary judgment stage, to establish that a hazard existed. Nevertheless, her claim fails because there is no evidence that defendant breached its duty of care. See <u>Segretti v. Shorenstein Co., East</u>, 256 A.D.2d 234, 234 (1st Dep't 1998) ("The mere existence of a foreign substance, without more, is insufficient to support a claim of negligence.").

To establish breach in a slip-and-fall action, the plaintiff must demonstrate that the defendant had actual or constructive notice of the condition that caused the fall. See <u>Gordon v. Am. Museum of Natural History</u>, 67 N.Y.2d 836, 837–38 (1986). A defendant has actual notice if it either created the condition or received reports of it. See <u>Torri v. Big V of Kingston, Inc.</u>, 147 A.D.2d 743, 744–45 (3d Dep't 1989). Here, Cousin argues that WCS breached its duty of

---

[3] Since the Court's jurisdiction over this matter is based on the parties' diversity of citizenship pursuant to 28 U.S.C. § 1332 and the allegedly negligent acts occurred in New York, the substantive law of New York governs this action. See, e.g., <u>Winston v. Marriott Intern., Inc.</u>, No. 03-CV-6321, 2006 WL 1229111, at *7 (E.D.N.Y. May 8, 2006).

care by creating a puddle that caused her to slip. See Pl. Opposition Br. at ¶ 1–3.[4] To establish that a defendant created a hazard, a plaintiff "must show [that] the creation was an affirmative, deliberate and intentional act by defendant." Olsen v. K Mart Corp., No. 04-CV-3648, 2005 WL 2989546, at *4 (E.D.N.Y. Nov. 8, 2005) (citing Cook v. Rezende, 32 N.Y.2d 596, 599 (1973) (internal quotation marks omitted). A plaintiff cannot avoid summary judgment through mere speculation and conjecture regarding how a defendant may have created a particular hazard. Krichevskaya v. City of New York, 30 A.D.3d 471, 471 (2d Dep't 2006).

The only evidence plaintiff identifies in support of her theory that defendant created the puddle is the presence of a yellow caution sign near the site of her fall. See Pl. Opposition Br. at ¶ 36–37. The surveillance video confirms that a caution sign was present in the restaurant at the time of the incident, though not in the location identified by plaintiff. In the video, the sign appears only semi-erect and plaintiff's description of the sign as "leaning up" on a wall and Williams' testimony that the sign was "folded up" indicates that the sign was not actually in use. In any event, even if an employee had erected the sign to warn against some hazard, simply displaying such a sign is not probative of whether defendant created a puddle. Rather, New York law requires proof of some "affirmative, deliberate and intentional" act that could result in a hazard, such as spilling a liquid. Olsen, 2005 WL 2989546, at *4; see also, Quarles v. Columbia Sussex Corp., 997 F. Supp. 327, 330 (E.D.N.Y. 1998) ("The intervening act of spilling the coffee creates the condition and it is not attributable to the defendant absent either spillage by the defendants' employees or conduct on the defendants' part which demonstrably increases the risk of creating the condition."). Displaying a caution sign is an act that acknowledges the presence of a hazard rather than an act that could have potentially created the particular puddle at issue

---

[4] Citations to "Pl. Opposition Br." refer to plaintiff's opposition papers, which consist, in their entirety, of a four-page document that appears to be a combined Rule 56.1 statement and memorandum of law.

here.  Similarly, the mere presence of a self-service beverage station in the restaurant, by itself, does not tend to prove that defendant created the hazard.  See id. (the mere fact that defendant maintained a coffee cart for its guests in the lobby did not amount to creation of the puddle since any hotel guest could have spilled coffee); Cooper v. Pathmark Stores, Inc., 998 F. Supp. 218, 220 (E.D.N.Y. 1998) ("The mere fact that a puddle of liquid originated from store merchandise does not establish the creation of the puddle, because, the puddle is not a direct consequence of the defendant's passive activity of providing merchandise for sale.").

No other evidence in the record supports an inference that defendant or its agents committed an act that could have created a puddle.  Neither plaintiff nor Williams reported seeing any employees carrying or handling liquids within the interior of the restaurant at any time prior to or after the fall and there is no evidence of employees mopping, making repairs, or engaging in any other activity that could have caused a puddle to form.  New York courts routinely grant summary judgment in favor of defendants in such circumstances. Compare Jones v. County of Rensselaer, 51 A.D.3d 1073, 1073–74 (3d Dep't 2008) (granting summary judgment where no one, including plaintiff, saw the puddle plaintiff slipped on prior to his fall and plaintiff's contention that defendant created it because it came from defendant's nearby food cart was pure speculation and conjecture) and Destelhorst v. Atlantic Detroit Diesel Allison, LLC, 23 A.D.3d 901, 901 (3d Dep't 2005) (granting summary judgment because plaintiff's bare assertion that because defendant's employee could add oil to equipment he was inspecting near the site of the fall and so must have had some oil with him and may have spilled it was mere speculation) with O'Hurley-Pitts v. Diocese of Rockville Centre, 57 A.D.3d 633, 633 (2d Dep't 2008) (denying summary judgment because evidence showed that the puddle plaintiff slipped on was near where defendant's employees were repairing an air conditioning unit and employees were aware of leaks from the repair work) and Granera v. 32nd Street 99 cent Corp., 46 A.D.3d

11

750, 750 (2d Dep't 2007) (denying summary judgment where plaintiff testified that she saw employees with buckets and mops near the site of her fall immediately after she slipped on a patch of soapy water).

There is also no evidence that defendant had actual or constructive notice of the hazard. A defendant has actual notice if it either created the condition or received reports of it such that it is actually aware of the existence of the particular condition that caused the fall. See Torri v. Big V of Kingston, Inc., 147 A.D.2d 743, 744–45 (3d Dep't 1989). As discussed above, plaintiff failed to establish that defendant created that condition. According to the record, defendant also did not receive any reports of the hazard. Neither plaintiff nor Williams reported any spills to WCS employees and plaintiff identified no other facts suggesting that anyone else did. Moreover, Graham, the shift manager, denied receiving any such reports on the night of the incident. Thus, plaintiff cannot prove actual notice based on defendant having received reports of the puddle. See Buskey, 2006 WL 2527826, at *6 (plaintiff failed to establish element of actual notice where record showed that neither plaintiff nor anyone else reported the slippery condition on which plaintiff fell to defendant); Matcovsky v. Days Hotel, 10 A.D.3d 557, 557 (1st Dep't 2004) ("The complaint should have been dismissed for lack of evidence that defendants received any complaints or otherwise acquired actual notice of the alleged puddle.").

Additionally, as with creation of a hazard, the mere presence of a self-service beverage machine within the premises is also insufficient to establish a prima facie case based on actual notice because "a 'general awareness' that a dangerous condition may be present is legally insufficient to constitute notice of the particular condition that caused plaintiff's fall." Piacquadio v. Recine Realty Corp., 84 N.Y.2d 967, 969 (1994). Finally, the fact that a yellow caution sign may have been near plaintiff's fall does not salvage plaintiff's claim because absent facts tending to link the placement of the sign to the puddle of soda and water identified by

plaintiff as the cause of her fall, there is no reasonable basis to conclude that defendant was aware of that particular hazard. See Torri, 147 A.D.2d at 744–45.

Plaintiff also failed to raise facts establishing that defendant had constructive notice of the puddle. To establish constructive notice, plaintiff must demonstrate that the condition was visible, apparent and existed for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it. Gordon v. Am. Museum of Natural History, 67 N.Y.2d 836, 837 (1986). Accordingly, plaintiff must present proof of either how the substance got there or how long it was there before the fall. Id. at 838.

Here, plaintiff has failed on both accounts. She has not identified a single fact that could lead to a reasonable conclusion about how or when the puddle formed. There is no evidence of any spills or leaks within the premises and there is no indication that anyone handled any liquid in any manner that could have created a puddle.[5] Additionally no one, including plaintiff, saw the puddle before the plaintiff fell and plaintiff did not describe anything about the puddle itself, such as melted ice, dirt, or track marks, suggesting that it was on the floor for an appreciable amount of time. Thus there is no evidence of constructive notice. See, e.g., Cobb v. Indus Ltd. P'ship, No. 98-CV-3549, 1999 WL 115441, at *3 (E.D.N.Y. Jan. 11, 1999) (no constructive notice where plaintiff did not see puddle before she fell and offered no evidence that someone walked through it or saw it before she fell); Gordon, 67 NY.2d at 838 (no constructive notice where plaintiff did not "describe the paper [on which he slipped] as being dirty or worn, which would have provided some indication that it had been present for some period of time"); Collins v. Grand Union Co., 608 N.Y.S.2d 335, 336 (3d Dep't 1994) (no constructive notice where there was no indication that the substance that caused the accident was dirty or had been tracked

---

[5] While the surveillance video shows that plaintiff, Williams, and others carried paper beverage cups around the restaurant at various points during the incident, that fact alone does not advance plaintiff's claim because there is no indication in the record that any customers spilled anything and to conclude otherwise would be pure speculation.

through and "hence, no evidentiary basis for an inference as to how long the condition had existed"); Torri, 147 A.D.2d at 743) (no constructive notice where plaintiff only saw substance on which she fell after she slipped and there was no other evidence regarding how the substance came to be on the floor or how long it was there).

### III. CONCLUSION

Even after all of the evidence is construed in the light most favorable to plaintiff, the record is devoid of evidence tending to show that defendant created the hazard or had actual or constructive notice of it and thus no reasonable jury could conclude that defendant breached the duty of care it owed to plaintiff. Therefore, defendant has met its burden of demonstrating that there is no genuine issue of material fact necessitating a trial. Since plaintiff has failed to respond with competent evidence that raises a material factual dispute, defendant's motion for summary judgment is granted.[6] The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

Dated: July 6, 2009
Brooklyn, New York

/s/
JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE

---

[6] Defendant also argues that plaintiff has failed to uncover evidence of causation. Assuming defendant's breach, plaintiff's testimony that her pants were wet immediately after the fall, if believed, could well provide sufficient circumstantial evidence for a jury to reasonably infer that the puddle caused the fall. See Dillon v. Rockaway Beach Hosp. & Dispensary, 284 N.Y. 176, 179, 30 N.E.2d 373, 374 (1940); Brito v. Manhattan & Bronx Surface Transit Operating Auth., 188 A.D.2d 253, 254, 590 N.Y.S.2d 450, 451 (1st Dept. 1992). However, since plaintiff cannot establish breach, the Court need not determine the sufficiency of her causation evidence.